IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY CULLEN                          *
                                     *
v.                                   * Civil Action No. WMN-10-0055
                                     *
SOMERSET COUNTY et al.               *
                                     *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM**

Before the Court are the following motions: a Motion to Dismiss filed by Secretary Gary Maynard, Maryland Department of Public Safety and Correctional Services, Paper No. 3; a Partial Motion to Dismiss filed by Defendants Somerset County and Henderson, Paper No. 7; and a Motion to Dismiss, also filed by Defendants Somerset County and Henderson, Paper No. 11. Plaintiff is not contesting the merits of Secretary Maynard's motion and that motion will be granted. The motions filed by Somerset County and Henderson are contested, at least in part, and are now ripe. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that these motions will be granted in part and denied in part.

**I. BACKGROUND**

This action arises out of allegations of physical violence and harassment suffered by Plaintiff Gary Cullen during two separate periods of incarceration at Somerset County Detention

Center (SCDC).  The Complaint alleges specific instances of violence and intimidation perpetrated by Defendant James Henderson, the warden of SCDC, and other employees of the SCDC.

Plaintiff alleges that two incidents occurred during his first period of incarceration.  On April 8, 2006, Plaintiff alleges that Defendant Henderson pushed him into a wall and punched him in the stomach while questioning him about a fight in the jail.  Later that same day, Plaintiff claims that Henderson pulled him from his cell, shackled him to a bench and slapped him in the face twice.  A month later, in May 2006, Plaintiff alleges that employees of SCDC locked him in the gymnasium for fifteen hours without food, water, toilet or bed.  Sometime after these incidents, Plaintiff was released from SCDC.

Later in 2006, after a subsequent conviction, Plaintiff returned to SCDC for a second period of incarceration.  Plaintiff alleges that, from November 15, 2006, to December 30, 2006, Defendant Henderson and other agents, servants or employees of SCDC continued to harass him and threaten him with violence.  The last specific incident of harassment at SCDC alleged by Plaintiff happened on January 9, 2007.  During this incident, employees of SCDC locked down Plaintiff's prison block for a shakedown inspection.  After the inspection, the inmates remained locked down but Officer Parkinson allowed Plaintiff out

to do whatever he wanted. In granting him this privilege, Officer Parkinson yelled "Oh yeah, the warden said 'Thanks for the information, it was helpful today,'" implying that Plaintiff was an informant. Plaintiff alleges that by being "pegged" as an informant, Henderson and the other employees of SCDC set him up to get beaten by other inmates. The next day, January 10, 2007, Plaintiff was transferred to the Wicomico County Detention Center to participate in a drug treatment program.

In February 2007, Plaintiff participated in an interview as part of an investigation of SCDC and Defendant Henderson. The next day, despite his progress, Plaintiff was expelled from the drug treatment program without explanation. Plaintiff alleges that Defendant Henderson instigated the expulsion in response to Plaintiff's participation in the investigation.[1]

After removing him from the drug program, the prison system transferred Plaintiff to the maximum security section of the Wicomico County Jail. Throughout his incarceration in Wicomico County Jail, other inmates repeatedly assaulted Plaintiff. Plaintiff alleges that these assaults were a result of Defendant Henderson implying that he was an informant, or "snitch", at SCDC.

---

[1] According to the Complaint, this investigation led to Defendant Henderson agreeing to resign as warden so as not to face criminal charges related to his conduct as Warden of SCDC.

Finally, on October 29, 2007, Plaintiff attended a hearing regarding his probation. When convicted prior to his second incarceration, the Court sentenced Plaintiff to a 15-year incarceration with an option to enter a one-year drug treatment program in lieu of this sentence. Because he did not complete the drug treatment program, Plaintiff received the 15-year sentence with 11 years suspended. Plaintiff contends that he served two years more in prison than he should have because Defendant Henderson had him removed from the drug treatment program before completion.

Subsequently, Plaintiff sent a letter providing notice of his claims to the Somerset County Board of Commissioners, which the Board received on June 28, 2007. On January 8, 2010, Plaintiff filed this action. The Complaint asserts claims for violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and the Maryland Declaration of Rights and for state common law torts of assault, battery and negligence.

In their Partial Motion to Dismiss, Defendants Somerset County and Henderson argued (1) the state law claims are precluded by the Local Government Tort Claims Act (LGTCA) because Plaintiff failed to provide timely notice as required under the Act; (2) Defendant Somerset County cannot be liable for a § 1983 claim because there is no respondeat superior

liability under § 1983, nor are there grounds for a Monell[2] claim; (3) the County has governmental immunity from the assault, battery and negligence claims, (4) the assault claim is barred by the statute of limitation, and (5) Defendant Henderson has public official immunity from the negligence claim. Plaintiff concedes that the assault claim alleged against Defendants Somerset County and Henderson and the battery claim alleged against Defendant Somerset County should be dismissed. Paper No. 10 at 2. In their later filed Motion to Dismiss, Defendants Somerset County and Henderson argued that all of the claims against them were barred by the applicable statute of limitations. They also aver that Plaintiff's claims are barred by the federal Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, and its Maryland counterpart, Md. Code. Ann., Cts. & Jud. Proc. § 5-1003.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, -- U.S. ---,---, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2] Monell v. Dept. of Social Servs. of New York, 436 U.S. 658 (1978).

5

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations are not required, but allegations must be more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action[.]' Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 330 U.S. at 555). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

### III. DISCUSSION

Because they encompass the entire Complaint, the Court will first address the arguments made in the motion to dismiss.

#### A. Statute of Limitations

As noted above, the Complaint in this action was filed on January 8, 2010. Asserting that the last actionable wrong in the Complaint occurred in "late December 2006," Defendants

contend that all of Plaintiff's claims are barred by Maryland's three year statute of limitations.[3] Plaintiff counters that Defendants have misread the Complaint, ignoring that he alleged that Henderson's orchestration of events to have him "pegged" as an informant or "snitch" took place on January 9, 2007. Paper No. 12 at 3. Defendants Somerset County and Henderson respond that these "pegged-as-an-snitch" allegations cannot support a cognizable claim against them under § 1983 or the Maryland Declaration of Rights. Paper No. 13 at 2-5. The Court disagrees.

To make out a prima facie case that prison conditions violate the Eight Amendment,[4] a prisoner must prove two elements - that "the deprivation of [a] basic human need was objectively sufficiently serious, and that 'subjectively the officials

---

[3] See Md. Code Ann., Cts. & Jud. Proc. § 5-101 (providing for the general limitations period of three years for actions for which no other period is specifically provided); Grattan v. Burnett, 710 F.2d 160, 162 (4th Cir. 1983) (holding that because § 1983 specifies no limitations period for action brought thereunder, courts borrow the limitations period for the most analogous state action which for § 1983 is the three year limitations period in Md. Code Ann., Cts. & Jud. Proc. § 5-101). Plaintiff does not dispute that this is the applicable statute of limitations.

[4] Plaintiff characterizes his § 1983 civil rights claim as one for deprivation of due process and equal protection. Compl. ¶ 47. Claims such as those presented here, at least as to the "pegged as a snitch" allegation, are more properly and typically considered under the Eight Amendment's prohibition of cruel and unusual punishment. See, e.g., Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001).

act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Plaintiff has alleged that he was "repeatedly assaulted by other inmates" because he was labeled as an informant, Compl. ¶ 38, and that he suffered "extreme pain, extreme suffering, [and] mental anguish" as a result of Defendants' conduct. Id. ¶ 61. The clear inference from Plaintiff's allegations is that Defendant Henderson fully intended for his actions to result in these assaults. Many courts have held that a § 1983 claim can stand against a prison official who spreads a rumor that an inmate was a "snitch," knowing that the inmate would probably be beaten by other inmates. See, e.g., Northington v. Marin, 102 F.3d 1564, 1567-68 (10th Cir. 1996); Hobbs v. Evans, 924 F.2d 774, 775 (8th Cir. 1991); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989); see also, Miller v. Leathers, 913 F.2d 1085 (4th Cir. 1990) (opining that "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch'"). At least one court has held that an inmate who alleged he was labeled as a snitch by a correctional officer with the intention that the inmate would be harmed by other inmates sustained a psychological injury due to his fear of assault sufficient to state a claim for violation of the Eight Amendment, even though the inmate had not in fact been assaulted. Benefield, 241 F.3d at 1270-72.

8

In addition to challenging the legal sufficiency of Plaintiff's pegged-as-a-snitch claim, Defendants Somerset County and Henderson also suggest that the claim is not factually supported. They note that it was other correctional officers, besides Henderson that actually made the statements that pegged Plaintiff as a snitch and that the actual assaults took place at the Wicomico County Jail, not at SCDC. At this stage in the litigation, however, the Court finds Plaintiff's allegations sufficient to support the conclusion that it was Henderson who put into motion the chain of events that lead to the assaults on Plaintiff.

Relying on a "continuing tort" theory, Plaintiff argues that he can also base his claims on conduct that occurred more than three year prior to his filing suit. Courts applying the federal common law[5] have held that where the tortious conduct is of a continuing nature, the statute of limitations generally runs from the date of the last tortious act or until the tortious conduct ceases. Gross v. United States, 676 F.2d 295 (8th Cir. 1982); Williams v. Norfolk and W. Ry Co., 530 F.2d 539, 542 (4th Cir. 1975); see also Maslauskas v. United States, 583 F. Supp. 349, 351 (D. Mass. 1984) ("A continuing tort

---

[5] While § 1983 actions borrow the time period for the statute of limitation from state law, the date for the accrual of a § 1983 action is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007).

9

sufficient to toll the statute of limitations is occasioned by continual unlawful acts, not by continuing ill effects from an original tort."); Shamsud'diyn v. United States, Civ. No. 00-1893, 2001 WL 436152 at *2 (D. Md. Apr. 6, 2001) ("'When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases,'" quoting Page v. United States, 729, 821 (D.C. Cir. 1984)).

At this stage in the litigation, the Court finds that the harassment and threats of violence that allegedly took place in November and December of 2006 are sufficiently a part of a "continuing tort" to prevent claims based upon those allegations from being barred. It is doubtful, however, that the continuous tort doctrine can be stretched to reach events that occurred during Plaintiff's first period of incarceration at SCDC. The Court need not ultimately reach that issue, however, as claims arising out of that incarceration are barred by the LGTCA, as explained below. See § C.

B. Prison Litigation Reform Act

Defendants Somerset County and Henderson assert in a somewhat perfunctory manner that Plaintiff's claims are barred by the PLRA and its Maryland counterpart. Paper No. 11 at 4-5. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

10

or any other Federal law, by a prisoner <u>confined</u> in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Maryland's Prisoner Litigation Act similarly provides that "[a] prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance," Md. Code Ann., Ct. & Jud. Proc. § 5-1003(a)(1), with "prisoner" defined as "a person who is <u>in the custody</u> of the [Department of Public Safety and Correctional Services] or a local detention center." <u>Id.</u> § 5-1001(g) (emphasis added). When Plaintiff filed this action, however, he had been released from custody. "[I]t is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies," and a former inmate who has been released is no longer "incarcerated or detained" for the purposes of the PLRA. <u>Cofield v. Bowser</u>, 247 Fed. App'x 413, 414 (4th Cir. 2007).

<u>C. Local Government Tort Claims Act</u>

Defendants have argued that the state law claims alleged in the Complaint are barred under the Local Government Tort Claims Act (Act), Md. Code Ann., Cts. & Jud. Proc. § 5-301, <u>et seq.</u>, because Plaintiff failed to provide timely notice as required by the Act. The Act specifies:

> Except as provided in subsections (a) and (d) of
> this section, an action for unliquidated damages
> may not be brought against a local government or
> its employees unless the notice of the claim
> required by this section is given within 180 days
> after the injury.

Md. Code Ann., Cts. & Jud. Proc. § 5-304(b).

The Board of County Commissioners for Somerset County received a letter providing notice of Plaintiff's claim on June 28, 2007 (Notice Letter). Calculating back 180 days, the Notice Letter provided timely notice for injuries which occurred on or after December 28, 2006. Therefore, Plaintiff's state law claims as to events that occurred on or after December 28, 2006 are not barred for failure to provide notice under the Act.

With respect to injuries arising out of incidents that occurred prior to December 28, 2006, Plaintiff argues that the notice requirement should be waived based on the good cause exception. This exception provides that:

> Notwithstanding the other provisions of this
> section, unless the defendant can affirmatively
> show that its defense has been prejudiced by lack
> of required notice, upon motion and for good
> cause shown the court may entertain the suit even
> though the required notice was not given.

Md. Code Ann., Cts. & Jud. Proc. § 5-304(d)(2010).

The Maryland Court of Appeals has stated that it is within the trial court's discretion to determine whether or not there exists good cause to waive the notice requirement. E.g., Moore v. Norouzi, 807 A.2d 632, 641 (Md. 2002). To determine whether

12

good cause exists, the court should use a test of ordinary prudence, that is, "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." Heron v. Strader, 761 A.2d 56, 63 (Md. 2000) (internal citations omitted).

Plaintiff claims that the reason he did not file a claim immediately after each incident was that he wanted to wait until he was out of danger. Paper No. 10 at 6. He argues that filing a claim immediately would have put him "in the position of having to anger Defendant Henderson — the very person assaulting and battering him — by threatening him with a lawsuit while still under his authority." Id.

Furthermore, Plaintiff argues that the Defendants have not been prejudiced by a lack of notice, as demonstrated by the fact that they conducted a timely investigation that preserved evidence and testimony. As Defendants have not disputed this argument, the Court finds that the defense will not be prejudiced by a decision to waive the notice requirement.

For these reasons, the Court finds good cause to waive the notice requirement for the incidents that occurred during Plaintiff's second period of incarceration. Plaintiff reasonably waited until he had been removed from Defendant Henderson's supervision and influence to provide notice of his

claim.  It was only at this point that Plaintiff's fear of retaliation from Defendant Henderson could reasonably dispel, making it safe for him to notify Defendant Somerset County about the pending claims.  Thus, the Court holds that Plaintiff prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.

Notwithstanding, the Court does not find good cause to waive the notice requirement with regard to allegations of incidents occurring during the first period of incarceration. The Complaint alleges incidents occurring in April and May 2006, but then goes on to state that Plaintiff was subsequently released, and, "later in 2006," arrested again, convicted and sent back to SCDC.  Compl. ¶¶ 14-16.  Even if Plaintiff was fearful while under the authority of Detective Henderson, an ordinarily prudent person would have provided notice of his claims during this break in incarceration while free from the supervisory power of the perpetrator.

Therefore, the Court will deny the Defendants' motion to dismiss Plaintiff's state law claims based on the LGTCA insofar as they arise out of incidents alleged to have occurred during his second period of incarceration.  The Court will grant Defendants' motion, however, as to events occurring during his first period of incarceration.

D. Section 1983 Claims Against Somerset County

Defendant Somerset County argues that the civil rights claim pleaded pursuant to 42 U.S.C. § 1983 should be dismissed because Plaintiff has not alleged any facts upon which relief may be granted. Plaintiff concedes that Somerset County cannot be held vicariously liable for constitutional violations allegedly perpetrated by Defendant Henderson and other employees at the Somerset County Jail.[6] Notwithstanding, Plaintiff argues that Somerset County injured Plaintiff through its governmental policies, practices or custom, and therefore can be held liable under § 1983.

Pursuant to Monell v. Department of Social Services of City of New York, it is clear that a governmental entity can only be held liable under § 1983 if the constitutional violation at issue is the result of an official policy, custom or practice. 436 U.S. 658 (1978). Despite this requirement, the Complaint does not contain any factual allegations that the injuries suffered by Plaintiff resulted from an official policy, custom or practice. Plaintiff suggests that the allegation in his Complaint regarding Somerset County's agreement to not prosecute Henderson if Henderson resigned establishes a government policy

---

[6] Unlike under § 1983, local governmental entities do, indeed, have respondeat superior liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment.

or practice "to cover up and distort the events that occurred." Paper No. 10 at 8. This argument fails for several reasons.

First, the fact that Somerset County undertook an investigation into the conduct of employees at SCDC after learning about alleged harassment of prisoners cuts against this argument. Instead of covering up incidents of harassment, Somerset County interviewed prisoners and employees to reveal the truth. Plaintiff has actually benefited from Somerset County's actions by gaining access to the investigative file and using much of that information as a factual basis for his Complaint. Pl.'s Opp. 1.

Second, as a result of this investigation, Somerset County essentially forced Henderson to resign as Warden. Though Plaintiff may have preferred Somerset County to impose harsher penalties, the fact remains that Somerset County did take action that demonstrated its disapproval of the events alleged to have occurred during Henderson's tenure at Somerset County Jail.

Third, Plaintiff's argument only speaks to actions taken by Somerset County <u>after</u> Plaintiff allegedly suffered Constitutional violations. There are no allegations that Somerset County knew about or tacitly approved the harassment that was allegedly taking place in SCDC while it was ongoing. Even if the agreement with Henderson served to cover up the

incidents, Plaintiff has not alleged that he suffered any injury because of Somerset County's after-the-fact actions.

Plaintiff also argued that the Court should consider the fact that the investigative file indicates that multiple prisoners suffered harassment and improper treatment while incarcerated at SCDC. This argument fails because Plaintiff did not plead these facts in his Complaint, nor do the facts indicate that Somerset County tacitly approved or knew anything about the alleged incidents <u>prior</u> to conducting the investigation.

As Plaintiff has failed to plead any facts sufficient to make a <u>Monell</u> claim, the Court will dismiss Count I as against Somerset County.

E. Negligence Claim Against Somerset County - Governmental Immunity

Defendant Somerset County argues that the negligence claim pleaded in Count VII should be dismissed because it cannot be held liable for the torts of Defendant Henderson. Somerset County also argues that, as a municipal entity, it is immune from any tort liability for actions that are governmental rather than propriety in nature. Paper No. 7 at 7 (citing, <u>inter alia</u>, <u>Dipino v. Davis</u>, 729 A.2d 354, 369-70 (Md. 1999)).

Plaintiff counters the first argument by pointing out that he pled a direct action for negligence against Defendant

17

Somerset County for negligent hiring/supervision. As to the second argument, Plaintiff implicitly concedes that Somerset County enjoys government immunity from liability on his negligence claim and suggests that he be permitted to amend his Complaint to bring his negligent hiring/supervision claim against one or more of the Somerset County Commissioners, instead of the County. Paper No. 10 at 8. Such an amendment, however, would be futile as the County Commissioners would be entitled to public official immunity from liability for any negligent acts during the course of their discretionary (as opposed to ministerial) duties. <u>Houghton v. Forrest</u>, 989 A.2d 223 (Md. 2010). The County Commissioners are certainly public officials, see <u>Christian v. Cecil County, Md.</u>, 817 F. Supp. 1279, 1290 (D. Md. 1993), and hiring and supervision are unquestionably discretionary duties. <u>Baltimore Police Dept. v. Cherkes</u>, 780 A.2d 410, 438 (Md. Ct. Spec. App. 2001).

### F. Negligence Claim Against Henderson - Public Official Immunity

The Court finds that Defendant Henderson is also entitled to public official immunity from liability for the negligence claim brought against him. Plaintiff disputes this argument by suggesting there is an issue of fact as to whether Defendant Henderson is a public official or a mere government employee.

Based on the Complaint, Defendant Henderson was acting as the prison warden of Somerset County Jail at all times during which he allegedly breached a duty to the Plaintiff that resulted in Plaintiff's injury. Maryland law is clear that a prison warden is a public official. See Carder v. Steiner, 170 A.2d 220, 222 (Md. 1961)(overruled on other grounds)(holding that a prison warden and prison guards are public officials); Clark v. Ferling, 151 A.2d 137, 139 (Md. 1959)(holding that Superintendant of Maryland State Reformatory for Males was public officer). While Plaintiff contends that there is a question as to whether Defendant Henderson should be considered a public official, he fails to provide any substantive argument or facts that create an issue as to Henderson's status. As such, the Court will dismiss Count VII against Defendant Henderson.

## IV. CONCLUSION

For these reasons, the Partial Motion to Dismiss, Paper No. 7, and Motion to Dismiss, Paper No. 11, will be granted in part and denied in part. The claim that remains against Defendant Somerset County is the claim under the Maryland Declaration of Rights. The claims that remain against Defendant Henderson are the § 1983 claim, the claim under the Maryland Declaration of

Rights, and the battery claim.[7]  Furthermore, all claims are limited to events that occurred during and after Plaintiff's second period of incarceration at SCDC.  All claims against the Secretary of the Maryland Department of Public Safety and Correctional Services will be dismissed.

/s/<br>
William M. Nickerson<br>
Senior United States District Judge

Dated: May 25, 2010.

---

[7] The current status of the battery claim against Henderson is somewhat confusing.  While Plaintiff conceded that both the assault and battery claims against Somerset County should be dismissed, he only conceded that the assault claim against Defendant Henderson should be dismissed.  Paper No. 10 at 2. Under the facts alleged in the Complaint, it is difficult to imagine how Henderson could be said to have committed a battery without having also committed an assault.  It is also not clear upon which events Plaintiff is basing his battery claim.  If it is premised solely on Henderson's alleged pushing, punching and slapping of Plaintiff during his first detention, the claim would be time barred.  The battery count, however, also includes the allegation that Henderson's conduct constituted "the setting in motion of an event which resulted in an offensive, non-consensual touching of Plaintiff," Compl. ¶ 60, which would seem to allude to the "pegged as a snitch" allegations. See Nelson v. Carroll, 735 A.2d 1096, 1100 (Md. 1999) (observing that to establish a battery claim, "it is enough that the defendant sets a force in motion which ultimately produces the result").

As Defendant Henderson makes no challenge to the battery claim against him except for raising the statute of limitations defense, the Court will allow the claim to proceed, at least at this stage of the proceedings.